### WILL PORTER v. THE STATE.

No. 2779.    Decided November 19, 1913.

**1.—Murder—Trial Judge—Statement of Facts—Bills of Exception.**

The judge of the court who tried the case and before whom the proceedings were had could alone approve the bills of exception and statement of facts, and his successor could not do so, and a motion to strike out said alleged statement of facts and bills of exception so filed must be sustained.

**2.—Same—Practice on Appeal—Death Penalty.**

Where the alleged statement of facts and bills of exception could not be considered on appeal, but this court, nevertheless, considered them because of the death penalty inflicted, and no reversible error appeared, the judgment will be affirmed.

**3.—Same—Insulting Language.**

Where it appeared from the purported statement of facts that the alleged insulting language by deceased to defendant was not the cause of the killing, even if it was used, there was no error. Following Fitzpatrick v. State, 37 Texas Crim. Rep., 20.

**4.—Same—Indictment—Grand Jury.**

If the bill of exceptions, raising the point that the county attorney had with him in the grand jury room a sworn bailiff as his stenographer taking the testimony and who was not present while the grand jury discussed the propriety of

finding an indictment, had been properly taken and filed, it presented no valid ground for quashing the indictment on that ground. Following Haywood v. State, 61 Texas Crim. Rep., 92, and other cases.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Barry Miller.

Appeal from a conviction of murder in the first degree; penalty, death. The opinion states the case.

*A. S. Baskett,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—Cited cases in opinion.

PRENDERGAST, Presiding Judge.—On December 31, 1912, the grand jury of Dallas County indicted appellant, in Criminal District Court No. 2 of Dallas County, for the murder of Jesse Franklin, alleged to have been committed on December 29, 1912. He was tried at the January Term, 1913, and the verdict rendered on January 16th assessed his punishment at death.

The term of the court at which he was tried convened on January 6, 1913, and adjourned on April 5, 1913. The record shows, and we judicially know, that Judge Barry Miller was the judge of that court and that he did not resign as such judge until February 10, 1913. We also judicially know that Judge W. L. Crawford, Jr., was appointed and took the oath of office as the successor of Judge Miller on March 1, 1913. The record further shows that all of appellant's motions, for new trial and in arrest of judgment, were acted upon by Judge Miller, during his term of office, and that the notice of appeal was given on February 1, 1913, by which and at which time the jurisdiction of this court attached. In other words, the record shows that the whole case was tried and everything in connection therewith was had before Judge Miller while he was the judge of that court and before his resignation took effect, and that Judge Crawford had nothing to do with any of these matters. His connection with the case and everything in connection therewith, is shown to have begun for the first time on March 3, 1913, when he granted an extension of time to appellant for filing the statement of facts and bills of exceptions, and that his only connection with the case or any proceeding therein, were on and after March 3, 1913.

There is filed with the record what purports to be a statement of facts, and one bill of exception. The bill of exception was approved by Judge Crawford and not by Judge Miller. It shows to have been signed and approved and ordered filed by Judge Crawford on April 30, 1913, and further shows on its face that it was to the overruling of appellant's motion,—made, heard and acted upon by Judge Miller on February 1, 1913,—in arrest of judgment, claiming the indictment was insufficient, because a person not authorized by law and not a member of the grand jury, nor an attorney connected with the prosecution in

the case, was present while the grand jury was investigating and deliberating on this cause as to whether or not they would find an indictment against appellant. It further shows that Judge Miller and not Judge Crawford heard evidence on said motion at the time he acted thereon and overruled the same.

The purported statement of facts was filed in the lower court on April 26, 1913. It was not approved by Judge Miller, but shows to have been approved by Judge Crawford. Under this state of facts, as shown by this record, the Assistant Attorney-General makes a motion to strike out the said bill of exception and statement of facts. This question has heretofore carefully been considered by this court in the case of Richardson v. State, 71 Texas Crim. Rep., 717, 158 S. W. Rep., 517, wherein this court, after citing the statutes, held that the judge of the court who tried the case, before whom such proceedings were had, could alone approve bills of exception and statements of facts, and that his successor could not do so. We are thoroughly satisfied with the holding and opinion in that case, and in accordance therewith and with the statutes, we are under the necessity of sustaining the motion of the Assistant Attorney-General which we do, and therefore strike out the said bill of exception and statement of facts.

Notwithstanding this, as this is a case where the death penalty is assessed, we have carefully read the said bill of exception and purported statement of facts, and all of the questions raised by appellant in connection therewith; and if we could properly consider said purported statement of facts it would be amply sufficient to show:

That on December 29, 1912, about 4 p. m. the appellant and deceased were in a barber shop in the City of Dallas, Texas; that immediately preceding the killing for some time they had been gambling together, playing against one another; that the deceased had been doing the winning and wanted to quit and did quit the game; that appellant objected to this and became incensed because deceased would not longer continue gambling with him; that the deceased, after getting up from a bath room wherein they had been gambling, proceeded to leave appellant and procure and start to put on his overcoat; that before he could complete putting on his overcoat, appellant said to him, "I won't allow any God damn son-of-a-bitch to treat me wrong," at once went to his own overcoat, only a step or two from him, procured a six-shooter and began shooting at the deceased therewith; that the first shot struck the deceased near the center of the back going entirely through his body, coming out near his navel; that the deceased then partially turned around and that appellant again shot him through the left arm and then in the left side near or through the heart; that after the deceased had fallen on the floor, appellant shot him again, then searched his pockets and took the deceased's money out of his pockets, one dollar in silver dropping on the floor which was found soon afterwards when the body of deceased was removed. The appellant himself swore that he shot and killed the deceased, firing five or six times at him, but he claimed

that he did so to protect himself because he thought deceased was attempting at the time to get his knife and attack him, appellant; that he did not see any knife and did not see the deceased get any knife, or open any knife, but that he knew he was a dangerous and violent man; that he had on one or two occasions shortly before then seen the deceased have a fight with others in which he attempted to use or did use a knife, and that about a month prior to this, appellant himself had a fight with him, at which time he, deceased, attempted to use a knife on him. Several eyewitnesses for the State testified that at the time appellant killed the deceased, the deceased did not have any knife, did not attempt to get any and made no assault or attempted assault on appellant and did not threaten to assault him, but that the appellant shot the deceased in the back the first time, without any provocation at all, and continued shooting him rapidly until he had killed him, as stated above. The evidence by the State, if we could consider it, shows, without doubt, murder in the first degree. The preponderance of it is against appellant's claimed self-defense and it does not show or tend to show manslaughter. The court, however, charged on manslaughter in the only way that it could be claimed with any show of reason to be raised. He charged on self-defense in appellant's favor fully and correctly to which there is no complaint. The claimed insulting language by deceased to appellant, immediately before the killing, even if it had been used, does not show to have been the cause of the killing, but rather excludes that idea, and the court was not called upon to submit manslaughter on that theory. Even such language would not be adequate cause. Fitzpatrick v. State, 37 Texas Crim. Rep., 20.

If we could consider the said bill of exceptions at all, it shows this: That the county attorney had with him in the grand jury room at the time the grand jury was interrogating the witnesses in regard to this offense, Frank Barcum, who was a regularly and duly sworn bailiff for said grand jury, as his stenographer, taking down the testimony of the said witnesses; that he was not present while the grand jury was discussing the propriety of finding a bill of indictment, nor while the grand jury was voting on that question. This court has repeatedly held that under such circumstances the indictment was a valid one and should not be quashed on that account. Sims v. State, 45 S. W. Rep., 705; Wilson v. State, 41 Texas Crim. Rep., 115; Haywood v. State, 61 Texas Crim. Rep., 92. So that, in no event, even if we could consider it, would the bill of exceptions present any error in this case.

In no way, whether with the bill of exceptions and statement of facts fully considered, or without either or both of them, does the appellant point out any reversible error whatever in this case. The judgment will, therefore, be affirmed.

*Affirmed.*